1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KRISTAL A.,

                     Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                   Defendant.

Case No. C22-0453-SKV

ORDER REVERSING THE
COMMISSIONER'S DECISION

       Plaintiff seeks review of the denial of her application for Supplemental Security Income (SSI).  Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

       Plaintiff was born in 1983, and has an eighth-grade education.  AR 689-90.  She last worked on and off as a caregiver in approximately 2009 or 2010.  AR 690, 95-96, 148.

       On March 22, 2019, Plaintiff applied for benefits, alleging disability as of January 1, 2011.  AR 296-312.  Her application was denied initially and on reconsideration, and Plaintiff

requested a hearing.  AR 239.  Following a December 9, 2020 hearing, the ALJ issued a decision

on March 2, 2021, finding Plaintiff not disabled.[1]  AR 15-30, 121-42.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one**:  Plaintiff has not engaged in substantial gainful activity since the application
date.

**Step two**:  Plaintiff has the following severe impairments: degenerative disc disease,
asthma, obesity, major depressive order, and agoraphobia.

**Step three**:  These impairments do not meet or equal the requirements of a listed
impairment.  Regarding the Paragraph "B" criteria, the ALJ found that Plaintiff's mental
impairments resulted in moderate limitations in all four categories. [3]

**Residual Functional Capacity ("RFC")**:  Plaintiff can perform light work with
additional exertional, postural, environmental, cognitive, and social limitations.

**Step four**:  Plaintiff has no relevant past work.

**Step five**:  Relying on the testimony of a vocational expert ("VE"), there are jobs that
exist in significant numbers in the national economy that Plaintiff can perform, and
Plaintiff is not disabled.

AR 15-30.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the

Commissioner's final decision.  AR 1-6.  Plaintiff appealed the final decision of the

Commissioner to this Court.  Dkt. 4.

---

[1] Plaintiff filed two prior applications for benefits on December 22, 2010, and February 5, 2015, respectively.  AR
16.  Following hearings on those prior application, two ALJs found Plaintiff not disabled, and the Appeals Council
declined review in both cases.  AR 143-63 (April 2012 ALJ decision), 168-89 (April 2017 ALJ decision), 164-67
(Appeals Council's August 2013 denial), 190-95 (Appeals Council's November 2017 denial).  Below, the ALJ
found here that Plaintiff's "changed circumstances" and new evidence of degenerative disc disease rebutted the
"presumption of continuing non-disability," and that the earlier decisions had "no res judicata effect" on Plaintiff's
2019 application for benefits.  AR 16.

[2] 20 C.F.R. §§ 404.1520, 416.920.

[3] 20 C.F.R. Part 404, Subpart P., App. 1.

1

**LEGAL STANDARDS**

2

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

3

security benefits when the ALJ's findings are based on harmful legal error or not supported by

4

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir.

5

2005). As a general principle, an ALJ's error may be deemed harmless where it is

6

"inconsequential to the ultimate nondisability determination." *Treichler v. Comm'r of Soc. Sec.*

7

*Admin.,* 775 F.3d 1090, 1099 (9th Cir. 2014) (citations omitted).

8

Substantial evidence is "more than a mere scintilla. It means - and means only - such

9

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

10

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted); *Magallanes*

11

*v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom

12

testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that

13

might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is

14

required to examine the record as a whole, it may neither reweigh the evidence nor substitute its

15

judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

16

When the evidence is susceptible to more than one rational interpretation, it is the

17

Commissioner's conclusion that must be upheld. *Id.*

18

**DISCUSSION**

19

Plaintiff argues the ALJ erred in assessing seven of the ten medical opinions[4] in her case.

20

The Commissioner argues the ALJ's decision is free of harmful legal error, supported by

21

substantial evidence, and should be affirmed.

22

23

[4] The Court acknowledges that what were previously considered "opinions" from state agency medical and psychological consultants have now been relabeled as "prior administrative medical findings." 20 C.F.R. § 416.913(a)(5); *see also* Revisions to Rules, 2016 WL 4702272, 81 Fed. Reg. 62560-01, at 62564 (Sept. 9, 2016).

ORDER REVERSING THE COMMISSIONER'S
DECISION - 3

1        **I.      Legal Standards Regarding Medical Opinions**

2                 Under the regulations applicable to this case, the ALJ must consider all medical opinions

3        and "evaluate their persuasiveness" based on the following factors: 1) supportability; 2)

4        consistency; 3) relationship with the claimant; 4) specialization; and 5) "other factors."  20

5        C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).  The two "most important factors for determining

6        the persuasiveness of medical opinions are consistency and supportability," which are the "same

7        factors" that "form[ed] the foundation of the [prior] treating source rule."  Revisions to Rules, 82

8        Fed. Reg. 5844-01 at 5853; *see also Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022).  In

9        articulating the persuasiveness of each medical opinion, the ALJ is required to explicitly address

10       supportability and consistency in their decision.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

11                With respect to "supportability," the regulations provide that "[t]he more relevant the

12       objective medical evidence and supporting explanations presented by a medical source are to

13       support his or her medical opinion(s) or prior administrative medical finding(s), the more

14       persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. §§

15       404.1520c(c)(1), 416.920c(c)(1).  Regarding "consistency," the regulations provide that "[t]he

16       more consistent a medical opinion(s) or prior administrative medical finding(s) is with the

17       evidence from other medical sources and nonmedical sources in the claim, the more persuasive

18       the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §§

19       404.1520c(c)(2), 416.920c(c)(2).  As with all other determinations made by the ALJ, the ALJ's

20

21

22       However, because "prior administrative medical findings" continue to be treated the same as other medical opinions,
         for clarity, the Court continues to refer to the "prior administrative medical findings" as "opinions" throughout this

23       Order.  *See* 20 C.F.R. § 404.1520c (considering "prior administrative medical findings" in the same manner and
         using the same factors as "medical opinions"); *see also* 81 Fed. Reg. 62560-01, at 62564 ("We would consider and
         articulate our consideration of prior administrative medical findings using the same factors we use to consider
         medical opinions from medical sources.").

1    persuasiveness explanation must be supported by substantial evidence.  *See Woods*, 32 F.4th at

2    787.

3         Typically, the ALJ "may, but [is] not required to" explain how they considered the

4    remaining three factors listed in the regulations.  *Id.*  However, where two or more distinct

5    medical opinions are equally supported and consistent, the ALJ should articulate how they

6    considered factors other than supportability and consistency, including the treatment relationship,

7    the extent of specialization, and any other relevant factors.  *See* 20 C.F.R. §§ 404.1520c(b)(3),

8    416.920c(b)(3); *see also Woods*, 32 F.4th at 792 (discussing 20 C.F.R. § 404.1520c(b)(3)) ("In

9    that case, the ALJ 'will articulate how [the agency] considered the other most persuasive

10   factors.'").

11   **II.    The ALJ Erred in Evaluating the Medical Opinions Regarding Plaintiff's Mental
          Impairments.**

12

13        **A.    Medical Opinions Regarding Plaintiff's Mental Impairments**

14        The ALJ possessed five medical opinions regarding Plaintiff's mental impairments,

15   including two from state agency non-examining consultants, Drs. Robinson and Eather, and three

16   from examining psychologists, Drs. Yun[5] and Hawley.  AR 203, 205-07, 219, 551-56, AR 689-

17   92 (July 2018), 1215-20 (June 2020).  In addition to the five medical opinions, the ALJ also had

18   medical records from Plaintiff's treating therapists and nurse practitioners at Sunrise.[6]  AR 399-

19   425, 452-543, 969-1002, 1003-13, 1226-86.

20        In their three 2018, 2019, and 2020 opinions, examining psychologists Drs. Yun and

21   Hawley found Plaintiff suffered from multiple moderate functional limitations based on her

22

23   _____

[5]DSHS psychologist, Dr. Yun, provided two medical opinions,  one in 2018, and the second  in 2020.

[6] The Sunrise clinicians, however, did not submit any "medical opinions" pursuant to 20 C.F.R. §§ 404.1513(a)(2),
416.913(a)(2).

mental impairments.  AR 551-56, 689-92, 1215-20.  The psychologists also agreed that Plaintiff

suffered from several marked functional limitations, namely, as pertained to her abilities to

maintain regular attendance, meet workplace interpersonal demands, and to interact with

coworkers and the public.  AR 555-56 (Dr. Hawley's opinion), 692 (Dr. Yun's 2018 opinion),

1218 (Dr. Yun's 2020 opinion).  In the most recent 2020 medical opinion regarding Plaintiff's

mental impairments, Dr. Yun noted that Plaintiff's ability to maintain appropriate behavior in a

work setting and to complete a normal workday had deteriorated from the marked limitation Dr.

Yun had previously opined to in 2018 to a "severe" limitation.  AR 1218.

By contrast, state agency consulting psychologists, Drs. Robinson and Either, agreed in

their respective 2019 opinions that Plaintiff possessed only moderate functional limitations as a

result of her mental impairments.  AR 203, 205-07, 219.

The ALJ found persuasive and ultimately adopted the moderate limitations opined to by

Drs. Robinson and Eather.[7]  AR 24.  In particular, the ALJ found that Plaintiff had the RFC to

"understand, remember, and carry[]out simple, routine instructions with only occasional changes

in the work setting."  AR 21.  The ALJ also concluded that Plaintiff should be limited to

"occasional interaction with supervisors and coworkers," and "only brief and superficial

interactions with the public."  AR 21.

The ALJ, however, rejected as unpersuasive the opinions from examining psychologists,

Drs. Hawley and Yun, offering nearly identical reasons for the rejection of the opinions.  First,

the ALJ found all three opinions unsupportable, asserting that "the examination[s] did not

support these limitations."  AR 26, 27.  The ALJ subsequently found all three opinions

inconsistent with the longitudinal record for identical reasons.  AR 26, 27.

---

[7] The ALJ also found moderate limitations in all four Paragraph B categories.  AR 19-20; *see also* 20 C.F.R. Part 404, Subpt. P, App. 1, 12.00(A)(2)(b).

ORDER REVERSING THE COMMISSIONER'S
DECISION - 6

Plaintiff argues that the ALJ erred in assessing the supportability and consistency of all of the medical opinions regarding her mental impairments. For the reasons that follow, the Court agrees.

**B.      Examining Psychologists, Drs. Hawley's and Yun's Opinions**

      **1.      Supportability**

            **a.      Dr. Yun's 2018 and 2020 Opinions**

Dr. Yun issued both of her medical opinions in conjunction with the DSHS's determinations regarding Plaintiff's edibility for DSHS assistance. AR 689-92 (July 2018), 1215-1220 (June 2020). In doing so, Dr. Yun reviewed Plaintiff's medical records, interviewed Plaintiff, and administered a Mental Status Examination ("MSE"), the Beck Depression Inventory, the Beck Anxiety Inventory, the Personality Assessment Inventory ("PAI"), and several cognitive tests. AR 689, 694, 1216.

In 2018, Dr. Yun diagnosed Plaintiff with PTSD, panic disorder, agoraphobia, major depressive disorder, and borderline personality disorder. AR 691. She noted that Plaintiff typically avoids leaving the house due to anxiety, and that she has a history of emergency room visits due to panic attacks. AR 690-91. In terms of Plaintiff's functional limitations, Dr. Yun opined that, in addition to numerous moderate limitations, Plaintiff possessed several marked impairments associated with understanding, remembering, and persisting in tasks by following detailed instructions; performing tasks on a schedule and maintaining regular attendance; communicating and performing effectively; maintaining appropriate behavior; and completing a normal workday and/or work week without interruptions from psychologically-based symptoms. AR 692. Dr. Yun ultimately opined that Plaintiff's overall RFC was markedly impaired. AR 692.

1    Nearly two years later, in 2020, Dr. Yun reassessed Plaintiff's DSHS benefits eligibility,

2    and, for the second time, diagnosed Plaintiff with PTSD, panic disorder, agoraphobia, and

3    persistent depressive disorder, in addition to cocaine and amphetamine use disorder, both in

4    sustained remission.  AR 1217.  Dr. Yun noted that many of Plaintiff's related symptoms were

5    both "severe" and "chronic."  AR 1216-17.  As for Plaintiff's functional limitations, Dr. Yun's

6    2020 assessment suggested that Plaintiff's limitations had increased from those in 2018.  AR

7    1218.  In addition to multiple marked impairments, Dr. Yun opined that two of Plaintiff's

8    previously marked impairments had worsened and become severe, including Plaintiff's ability to

9    maintain appropriate behavior in a work setting and her ability to complete a normal workday.

10   AR 1218.  Again in 2020, Dr. Yun rated Plaintiff's overall RFC as markedly impaired.  AR

11   1218.

12   The ALJ found that both Dr. Yun's 2018 and 2020 opinions were not supported by Dr.

13   Yun's "examination[s]."  AR 26, 27.  As for the 2018 opinion, the ALJ reasoned that Dr. Yun's

14   limitations were not supported by Plaintiff's self-reported daily routine, her lack of

15   hallucinations, and her performance on Dr. Yun's cognitive tests.  AR 27.  With Dr. Yun's 2020

16   opinion, the ALJ again cited to the absence of particular symptoms – this time, the absence of

17   hallucinations and delusions and suicidal or homicidal thoughts -- and to Plaintiff's performance

18   on the cognitive tests.[8]  AR 26.

19   At the outset, the Court notes that the ALJ's supportability findings regarding Dr. Yun's

20   opinions failed to adhere to the requirements for evaluating medical opinions and were,

21   therefore, not supported by substantial evidence.  Under the revised articulation requirements, an

22

23   _____

[8] Unlike Dr. Yun's 2018 opinion, the ALJ did not rely on Plaintiff's reported daily routine in rejecting Dr. Yun's 2020 opinion.  AR 26.  Presumably, this is because Dr. Yun acknowledged in her 2020 opinion that although Plaintiff lives alone, her sister visits to help her with grooming, cleaning, and cooking.  AR 1215-16.

ALJ must "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions" when determining how persuasive they find that source.  20 C.F.R. § 404.1520c(b)(2); *see also Woods*, 32 F.4th at 792 (An ALJ "cannot reject an examining . . . doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *accord  Armstrong v. Comm'r of Soc. Sec*., No. C22-0369-SKV, 2022 WL 4129609, at *3 (W.D. Wash. Sept. 12, 2022) (quoting *Woods*, 32 F.4th at 792) ("Even under the new regulations, an ALJ must provide 'an explanation supported by substantial evidence' to support his or her assessment of a medical opinion.").

Here, the ALJ did not explain how the cited evidence rendered Dr. Yun's opinions unsupportable and thus failed to provide the requisite "thorough, detailed explanation" required for this Court "to engage in meaningful appellate review."  *Jeanna M. B. v. Comm'r of Soc. Sec.*, No. 3:21-CV-5698-DWC, 2022 WL 2045602, at *2–3 (W.D. Wash. June 7, 2022) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence)); *see also Treichler*, 775 F.3d at 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").  Instead, the ALJ simply listed the record evidence absent any interpretation or explanation regarding why their interpretation of the evidence – rather than those of the doctors – was correct. *See Jeanna M. B*., 2022 WL 2045602, at *3; *see also Labryssa v. Kijakazi*, No. 21-CV-04233-BLF, 2022 WL 2833981, at *6-7 (N.D. Cal. July 20, 2022) (noting Ninth Circuit's recent opinion in *Woods*, 32 F.4th at 792, and concluding that ALJ must engage with a medical opinion in a "meaningful sense" in evaluating consistency and supportability factors and that a "passing assessment,"

which fails to "substantively engage" with the medical opinion, is not supported by substantial evidence).

However, even assuming that the ALJ's explanation regarding supportability was sufficient, for the reasons below, the Court's review of the ALJ's cited evidence produces the same result:  that the ALJ's cited evidence does not substantially support the ALJ's supportability findings.

*Dr. Yun's 2018 Opinion*

 In terms of her daily activities, the ALJ impermissibly "cherry-picked" portions of Plaintiff's statements to Dr. Yun, while ignoring others.  *See Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017) (improper for ALJ to "cherry-pick" absence of certain symptoms from medical evidence as opposed to undertaking a "broader development" of the evidence in its entirety); *see also Jeanna M. B.*, 2022 WL 2045602, at *2 (Ninth Circuit precedent prohibiting "cherry-picking" remains good law following the 2017 Rule Revisions).  For example, the ALJ relied on Plaintiff's statement to Dr. Yun in 2018 that she that she could engage in self-care and daily activities "independently."  AR 27 (citing AR 691).  However, the ALJ ignored the remainder of Plaintiff's statement:  that she is unable to leave her house due to anxiety.  AR 690-91.  It is error for an ALJ to cherry-pick evidence in this manner in discounting a medical opinion.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (ALJ should take "holistic review of the record" in evaluating medical opinions).

Moreover, as the Ninth Circuit has recognized, "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), superseded on other grounds by 20 C.F.R. § 404.1502(a).  Plaintiff's ability to, at times,

care for herself does not equate to an ability to work – nor does it serve to render less supportable

or undermine the limitations opined to by Dr. Yun.   *See Reddick v. Chater*, 157 F.3d 715, 722

(9th Cir. 1998) ("[D]isability claimants should not be penalized for attempting to lead normal

lives in the face of their limitations.").

Additionally, the ALJ's reliance on Plaintiff's lack of hallucinations is misguided because

hallucinations were not typically a symptom of Plaintiff's mental impairments; nor did Dr. Yun

rely on the presence or absence of hallucinations in formulating her opinion.  *See* AR 689-92.

Thus, the absence of hallucinations does not undermine the supportability of Dr. Yun's opinion,

especially given the numerous additional symptoms identified by Dr. Yun, including:  severe and

chronic avoidance behaviors, panic attacks, fear of having a panic attack, fear of being outside of

the house, PTSD, intrusive memories, nightmares, affective instability, anger and aggression,

and unstable relationships.  AR 690-91; *see also Holohan v. Massanari*, 246 F.3d 1195, 1207

(9th Cir. 2001) (reversing ALJ's selective reliance "on some entries in [the claimant's records

while ignoring] the many others that indicated continued, severe impairment").

Finally, the ALJ's supportability findings impermissibly reinterpret the raw data from Dr.

Yun's cognitive tests, substituting in the ALJ's own clinical findings with respect to Plaintiff's

memory and cognitive tests and independently assessing how Plaintiff's mental and physical

impairments impacted her ability to work.  *See* AR 27 (suggesting that Plaintiff's performance

on memory tests undermined Dr. Yun's opined limitations); *cf.* AR 694 (Dr. Yun describes

Plaintiff's performance, and, based on the performance, finds that Plaintiff's memory and

concentration were *not* within normal limits).  "[A]s a lay person, an ALJ is 'simply not qualified

to interpret raw medical data in functional terms.'"  *Burget v. Comm'r of Soc. Sec.*, No. C17-

1836 BAT, 2018 WL 4204057, at *3 (W.D. Wash. Sept. 4, 2018) (quoting *Padilla v. Astrue*, 541

F. Supp. 2d 1102, 1106 (C.D. Cal. 2008)); *see also Matthew N. C. v. Comm'r of Soc. Sec.*, No. 3:19-CV-05112-DWC, 2019 WL 4439890, at *4 (W.D. Wash. Sept. 17, 2019) (quoting *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006)) (noting "the ALJ's RFC determination or finding must be supported by medical evidence, particularly the opinion of a treating or an examining physician").  For these reasons, the ALJ's supportability findings regarding Dr. Yun's 2018 opinion were not supported by substantial evidence.

<em>Dr. Yun's 2020 Opinion</em>

For the same reasons as those stated above regarding Dr. Yun's 2018 opinion, the ALJ's supportability findings regarding Dr. Yun's 2020 opinion were also not supported by substantial evidence.

### b.     Dr. Hawley's 2019 Opinion

In May 2019, Dr. Hawley issued his opinion in conjunction with Plaintiff's 2019 benefits application.  AR 551-52.  He interviewed Plaintiff, reviewed her medical records, and administered several questionnaires and cognitive tests.  AR 551-52.  Dr. Hawley subsequently diagnosed generalized anxiety disorder, major depressive disorder, panic disorder with agoraphobia, and PTSD.  AR 554-55.

He observed that Plaintiff provided her best effort at cognitive tasks, and stated that there was no evidence of malingering "other than possible exaggeration of symptoms on anxiety and PTSD questionnaires."  AR 553.  Dr. Hawley noted that Plaintiff possessed "[l]imited academic development and job skills," and that she was further "hindered from further development by marked anxiety." While Dr. Hawley acknowledged that "home-based work may be possible," he opined that Plaintiff was "currently incapable of competitive full-time employment."  AR 555.

1  Dr. Hawley also opined that it was unlikely that Plaintiff's functioning and employability would

2  improve over time.  AR 555.

3        Like Dr. Yun, Dr. Hawley opined that Plaintiff possessed multiple moderate functional

4  limitations, along with several marked limitations in terms of her abilities to maintain attendance;

5  to interact with coworkers and public; and to meet workplace interpersonal demands.  AR 555.

6  Overall, Dr. Hawley opined that Plaintiff's depression, anxiety, and PTSD markedly impacted

7  her "ability to be a dependable employee."  AR 556.

8        The ALJ found that Dr. Hawley's opined functional limitations were not supported by his

9  examination.  AR 27.  Similar to Dr. Yun, the ALJ reasoned that Plaintiff "had no indications of

10  hallucinations or delusions;" that she presented with a normal rate and rhythm of speech; that she

11  had unimpaired insight and judgment; and that Plaintiff was "pleasant and cooperative."  AR 27.

12  The ALJ also similarly reinterpreted the results of Dr. Hawley's cognitive tests.  AR 27.

13        Again, the ALJ's simple listing of record citations absent any interpretation or

14  explanation regarding why the evidence undermines the supportability of Dr. Hawley's opinion,

15  fails to adhere to the requirements for evaluating medical evidence.  *See* 20 C.F.R. §

16  404.1520c(b)(2); *see also Woods*, 32 F.4th at 792.  Furthermore, review of the ALJ's record

17  citations confirms that they do not constitute substantial evidence that Dr. Hawley's opinion was

18  unsupportable.  Plaintiff's "cooperative and pleasant" presentation, clear speech, and unimpaired

19  judgment did not undermine Dr. Hawley's opined limitations for two primary reasons.  AR 693,

20  1220.  First, Dr. Hawley's opinion was based on other factors – including Plaintiff's interview,

21  his objective testing, and his diagnoses of multiple impairments.  AR 551-55.  Second, in

22  addition to Plaintiff's cooperative presentation, Dr. Hawley also observed that Plaintiff presented

23  as "dysphoric and anxious," which suggests the same sort of "cherry-picking" of evidence as that

1    associated with the ALJ's evaluation of Dr. Yun's opinions.  AR 553; *see Diedrich*, 874 F.3d at

2    642.

3          Finally, as discussed above, the ALJ is not permitted to simply reinterpret the raw data

4    from Dr. Hawley's cognitive tests, substituting in his own clinical findings.  *See Burget*, 2018

5    WL 4204057, at *3 (quoting *Padilla*, 541 F. Supp. 2d at 1106).

6          In sum, the Court concludes that the ALJ's supportability findings regarding Drs. Yun's

7    and Hawley's opinions were not supported by substantial evidence.

8                    **2.    Consistency**

9          The Court addresses together the consistency of Drs. Hawley's and Yun's opinions

10   because, unlike the supportability findings, the ALJ's consistency findings were identical for all

11   three opinions.  AR 26, 27.  In support of the ALJ's finding that the opinions were inconsistent

12   with the record, the ALJ asserted that Plaintiff had an "age-appropriate memory," and noted that

13   she "reported an ability to pay bills and count change. . . and read and write 'more than her

14   name[,]' [and] . . . to follow instructions well when read to her."  AR 26, 27.  The ALJ further

15   stated that Plaintiff was "generally cooperative;" and that she "reported no problem" with several

16   activities of daily living and, in fact, lived alone.  AR 26, 27.

17         The ALJ's consistency findings were not supported by substantial evidence for several

18   reasons.  First, the ALJ again failed to offer any explanation regarding how Plaintiff's

19   cooperative demeanor at medical appointments or her ability to count change and pay bills and to

20   read and write "more than her name," undermined the consistency of several of the severe and

21   marked limitations opined to by Drs. Hawley and Yun.  In fact, Plaintiff's most severe

22   limitations concerned functions unrelated to the reasons stated by the ALJ:  Plaintiff's ability to

23   perform tasks on schedule and maintain regular attendance, to maintain appropriate behavior in a

work setting, to interact appropriately with coworkers and the public, to adapt to changing or new environmental demands, and to meet workplace interpersonal demands and communicate.[9] AR 555, 1218, 692.  Drs. Yun's and Hawley's limitations appear largely consistent with the overwhelming record evidence that Plaintiff rarely leaves her home due to her severe agoraphobia and depression.  *See* AR 108, 132, 488, 542, 528.  Given this apparent consistency, the ALJ was required to do more than simply list record evidence that purportedly undermined it. Instead, the ALJ was required to explain why less restrictive limitations, such as those opined to by the state agency consultants, were more consistent with the longitudinal record, which the ALJ did not do.  *See Treichler*, 775 F.3d at 1103.

Moreover, review of the record citations confirms that they do not individually or collectively constitute substantial evidence supporting the ALJ's ultimate consistency finding. First, the record that the ALJ purports to cite to for Plaintiff's "age-appropriate memory" does not exist.[10]  *See* AR 26 (citing "Exh. C5F, p. 40").

Second, the ALJ's statement that Plaintiff "reported no problem with personal care tasks, preparing simple meals, completing laundry, and reported an ability to live alone"

---

[9] Dr. Yun, unlike Dr. Hawley, also opined that Plaintiff was markedly limited in her ability to understand, remember, and persist in tasks by following detailed instructions.  AR 692, 1218; *cf.* AR 555 (Dr. Hawley opined that Plaintiff's recent memory was mildly impaired, and that her sustained concentration and persistence were moderately impaired.).  The ALJ noted that Plaintiff stated in a July 2019 function report that she is able to follow instructions well when read to her.  *See* AR 26 (citing AR 365).  The Court acknowledges that Plaintiff's statement could be interpreted to undermine Dr. Yun's singular opined limitation regarding Plaintiff's ability to follow instructions.  *See* AR 692, 1218.  However, Plaintiff's July 2019 statement does not undermine the additional severe and marked limitations opined to by Drs. Yun and Hawley, as discussed above, which, if accepted, would be sufficient on their own to render Plaintiff disabled.  *See* 20 C.F.R. Part 404, Subpt. P, App. 1, 12.00(A)(2)(b) (Under Paragraph B, a claimant's mental disorder renders her disabled if it "result[s] in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning.").

[10] Exhibit "C5F," or AR 550-56, contains only six pages, and, thus there is no "page 40," as cited by the ALJ.  AR 26.  Upon further review, the Court is unable to discern the exhibit, if any, to which the ALJ intended to cite. Additionally, as noted, the medical opinions suggested that Plaintiff's memory was, at a minimum, mildly impaired. AR 555 (Dr. Hawley opined that Plaintiff had a mildly impaired memory); *cf.* AR 694, 1220 (Based on her performance on objective tests, Dr. Yun opined that Plaintiff's memory and concentration were *not* within normal limits).

mischaracterizes both the specific evidence cited by the ALJ and the longitudinal record.  AR 26.

For example, the ALJ cited to Plaintiff's March 2019 function report in which Plaintiff appears

to have inadvertently checked a box stating that she had "no problem" with her personal care.

AR 322.  In spite of checking that box, in a subsequent narrative section of the report, Plaintiff

elaborated that she needs her sister to remind her to bathe or shower and to take her medications.

AR 323.  Plaintiff also responded "yes" to subsequent inquiries in the same report as to whether

she needed "special reminders to take care of personal needs and grooming."  AR 323.

Moreover, in a successive July 2019 function report, Plaintiff again noted that she needed help or

reminders regarding personal needs and grooming and medication and that her sister "cleans

[her] house and does [her] laundry."  AR 362; *see also* AR 26 (citing AR 1216) (Plaintiff

reported to Dr. Yun that she lives alone and can independently perform her "ADLs" or "activities

of daily living," but elaborates that her sister helps her with cleaning, cooking, grooming,

transportation, and medication management).  Thus, the ALJ again "cherry-picks" certain

notations in Plaintiff's medical records -- which, in this case, constituted a box that Plaintiff

appears to have mistakenly checked -- as opposed to undertaking a more holistic review of the

record as required.  *See Ghanim*, 763 F.3d at 1162.

Additionally, in terms of Plaintiff's daily activities, the record clearly demonstrates that

Plaintiff required an appointed caretaker – and, at times, two caretakers – to help her with daily

routine and hygiene.  *See* AR 132-33, 1216, 528, 977, 1230.  It further reflects that that Plaintiff

was unhappy living alone, and that she regularly desired a live-in caretaker but that she could not

afford the additional living space required for such a caretaker.  *See* AR 456 (reporting to Sunrise

clinician that she would like a live-in caretaker because she was "not comfortable" living alone

anymore), 510 (reporting to Sunrise clinician that she submitted a medical accommodation

1   request seeking a larger apartment to accommodate a live-in caretaker).  And, finally, even

2   though Plaintiff may have been able to perform independently some routine living tasks, again,

3   the Ninth Circuit has clearly stated that a claimant's ability to prepare simple meals for herself

4   and to occasionally complete household chores does not translate to performance at a job.  *See*

5   *Smolen v. Chater*, 80 F.3d 1273, 1287 n. 7 (9th Cir. 1996) (A claimant need not be "utterly

6   incapacitated" to be eligible for disability benefits.).

7        For all of these reasons, the ALJ's consistency findings regarding Drs. Yun's and

8   Hawley's medical opinions were not supported by substantial evidence.

9      **C.**     **Medical Opinions from Non-Examining State Agency Consultants,**
            **Drs. Robinson and Eather**

10        The ALJ's evaluation of the opinions from state agency non-examining psychologists

11   Drs. Robinson and Eather does nothing to buttress the ALJ's rejection of Dr. Hawley's and

12   Yun's opinions because the ALJ's related consistency and supportability findings are similarly

13   unsupported by substantial evidence.

14        First, regarding supportability, without citation or explanation, the ALJ stated simply

15   that "[t]he review of Dr. Robinson and Dr. Eather supported these opinions."  AR 24.  This

16   statement leaves the Court to guess as to why or how the opinions are indeed supportable, and it

17   is insufficient under the revised articulation requirements.  *See* 20 C.F.R. § 404.1520c(b)(2).

18        Nor are the ALJ's consistency findings regarding Drs. Robinson's and Eather's opinions

19   supported by substantial evidence.  The evidence to which the ALJ cited simply demonstrates

20   that Plaintiff suffered from severe anxiety and depression.  AR 24 (citing evidence regarding

21   Plaintiff's severe anxiety around others, her poor recall during a memory test, and incidents of

22   aggressive behavior and blacking out).  Again, the ALJ fails to explain *how* the cited evidence

23   shows that the moderate functional limitations opined to by the state agency consultants, Drs.

Robinson and Eather, were more appropriate than the marked or severe limitations opined to by Drs. Yun and Hawley.

Accordingly, the Court concludes that the ALJ erred in evaluating the five medical opinions regarding Plaintiff's mental impairments from Drs. Yun, Hawley, Robinson, and Eather.  The error cannot be characterized as harmless, and the ALJ is therefore required to re-evaluate all five opinions on remand.[11]

Moreover, because the Court concludes that Drs. Hawley's and Yun's opinions were at least as supportable and consistent with the longitudinal record as those from Drs. Robinson and Eather, on remand, the ALJ is also required to consider the remaining three factors – treatment relationship, specialization, and any "other factors" -- with respect to all of the medical opinions concerning Plaintiff's mental impairments.   *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (ALJ should articulate how they considered factors other than supportability and consistency, including the treatment relationship, when they find two or more medical opinions about the same issue equally well-supported and consistent with the record); *accord Woods*, 32 F.4th at 792 (citing 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)) (noting that when "'two or more medical opinions . . . about the same issue are . . . equally well supported . . . and consistent with the record. . . but are not exactly the same,' . . . the ALJ 'will articulate how [the agency] considered the other most persuasive factors'").

---

[11] Had the ALJ adopted the limitations opined to by Drs. Hawley and/or Yun, Plaintiff would have been rendered disabled. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, 12.00(A)(2)(b) (Under Paragraph B, a claimant's mental disorder renders her disabled if it "result[s] in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning.").

1
2

III.     **The ALJ Erred in Evaluating the Medical Opinions Regarding Plaintiff's Musculoskeletal/ Cervical Impairments.**

3

Plaintiff also challenges the ALJ's treatment of the medical opinions regarding her

4

"musculoskeletal impairments," which include the degenerative disc disease that the ALJ found

5

to be a severe impairment.[12] Dkt. 10 at 14; AR 18.  In particular, Plaintiff argues that the ALJ

6

erred in rejecting the opinions of her treating physician, Dr. Khademi, and her treating

7

physiatrist, Dr. Lee.  AR 1221, 1431.  For the reasons that follow, the Court agrees.

8

A.     **Medical Opinions Regarding Plaintiff's Musculoskeletal Impairments**

9

Five physicians offered medical opinions regarding Plaintiff's musculoskeletal

10

impairments, including:  (1) the May 2019 opinion from one-time examining consulting state

11

agency physician, Dr. Dan Phan, AR 544-49; (2) June and October 2019 opinions from non-

12

examining consulting state agency physicians, Drs. Virji and Staley, respectively, AR 202, 221-

13

22; (3) a November 2020 opinion from Plaintiff's treating physiatrist, Dr. Lee, AR 1221; and (4)

14

a December 2020 opinion from Plaintiff's treating primary care physician, Dr. Khademi, AR

15

1431.[13]

16

All three state agency physicians completed their opinions prior to Plaintiff's 2020 MRI,

17

and all three opinions generally contained functional limitations less restrictive than those opined

18

to by Plaintiff's treating physician and physiatrist following her 2020 MRI.  AR 202, 221-222,

19

544-49; *cf.* AR 1221, 1431.  In fact, one of the state agency consulting physicians, Dr. Virji,

20

opined in 2019 that Plaintiff possessed *no* physical functional limitations.  AR 202.  By contrast,

21

two of the consulting physicians, Drs. Staley and Phan, opined that Plaintiff was able to complete

22
23

---

[12] As noted, the ALJ found that Plaintiff suffered from three severe physical impairments:  asthma, degenerative disc disease, and obesity.  AR 18.  Plaintiff, however, does not challenge the ALJ's findings regarding her asthma or obesity.  Dkt. 10 at 12-16.

[13] Neurosurgeon, Dr. Su, did not submit a "medical opinion" pursuant to 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

1  light work, and that she was able to sit at least six hours in an eight-hour workday, and to stand

2  and/or walk for at least six hours.  AR 221-22, 546.  Dr. Phan concluded that Plaintiff possessed

3  no lifting restrictions; whereas Dr. Staley, like Plaintiff's treating physician, Dr. Khademi,

4  opined that Plaintiff was able to lift and/or carry twenty pounds occasionally and ten pounds

5  frequently.  AR 221, 546, 1431.  Additionally, Dr. Phan opined that Plaintiff possessed no

6  reaching, climbing, postural, or manipulative restrictions.  AR 546.  Dr. Staley similarly opined

7  that Plaintiff possessed no reaching, postural, or manipulative restrictions, but found that

8  Plaintiff was only occasionally able to climb ramps or stairs.  AR 546, 222.

9       Treating physicians, Drs. Khademi and Lee generally opined to more severe limitations

10  than those of the state agency physicians.  AR 1221-22, 1431-32.  However, unlike Dr. Khademi,

11  Dr. Lee opined that Plaintiff was capable of "less than sedentary work," and Dr. Lee's opined

12  limitations were typically more restrictive than those of Dr. Khademi.  AR 1221-22, 1431-32.

13  Both Drs. Khademi and Lee agreed that Plaintiff could stand and/or walk for less than two hours

14  per day.  AR 1432, 1222.  However, Dr. Lee opined that Plaintiff could sit for less than four

15  hours per day, while Dr. Khademi opined that Plaintiff was able to sit for four to six hours per

16  day.  AR 1432, 1222.  Dr. Khademi's and Lee's opinions also differed regarding Plaintiff's

17  lifting restrictions.  While Dr. Khademi agreed with state agency physician, Dr. Staley, that

18  Plaintiff could lift and or carry twenty pounds occasionally and ten pounds frequently, Dr. Lee

19  opined that Plaintiff was unable to lift up to ten pounds and was unable to lift and carry even

20  light items frequently.  AR 1431, 1221.  Additionally, both Drs. Lee and Khademi agreed that

21  Plaintiff possessed additional postural and reaching limitations.  AR 1223, 1433.

22       Significantly, both Drs. Khademi and Lee also opined that Plaintiff's cervical

23  impairments would cause her to miss work more than twice per month and would require

1   additional, more frequent breaks beyond the customary scheduled work breaks.  AR 1434, 1225.

2   They both also opined that Plaintiff would require flexible scheduling.  AR 1225.

3        With one modification, the ALJ found persuasive and adopted non-examining consulting

4   physician, Dr. Staley's October 2019 opinion in formulating Plaintiff's RFC.[14]  AR 23-24.  The

5   ALJ, however, rejected as "not persuasive" the more recent 2020 opinions from Plaintiff's

6   treating physiatrist, Dr. Lee, and treating physician, Dr. Khademi, because those opinions

7   contained more stringent limitations related to Plaintiff's musculoskeletal impairments.  AR 25-

8   26.  Ultimately, regarding Plaintiff's musculoskeletal impairments, the ALJ agreed with Dr.

9   Staley that Plaintiff was capable of light work and could sit approximately six hours and stand

10  and/or walk six hours per eight-hour workday.  AR 21.

11       As for lifting, the ALJ agreed with Drs. Staley and Khademi that Plaintiff could lift

12  and/or carry twenty pounds occasionally and ten pounds frequently, and could occasionally

13  climb ramps, stairs, ladders, ropes, and scaffolds.  AR 21.  The ALJ rejected treating physicians,

14  Drs. Khademi's and Lee's postural limitations, and agreed with Dr. Staley that Plaintiff could

15  frequently, balance, stoop, kneel, and/or crawl.  AR 21.  Finally, the ALJ added a reaching

16  restriction that was not present in Dr. Staley's opinion but to which both Drs. Lee and Khademi

17  opined:  that Plaintiff could only "occasionally reach overhead with her bilateral extremities."

18  AR 21, 1223, 1433.  The ALJ did not, however, address Plaintiff's need for additional breaks,

19  flexible schedule, and/or likely absences as opined to by Drs. Khademi and Lee.

20       Plaintiff challenges the ALJ's persuasiveness findings regarding Drs. Khademi's and

21  Lee's opinions.

22

23  ─────────────────
[14] The ALJ rejected as not persuasive consulting physician Dr. Virji's June 2019 opinion because Dr. Virji opined that Plaintiff had *no* physical functional limitations, in direct conflict with the ALJ's finding that Plaintiff indeed possessed several severe physical impairments.  AR 26.  The ALJ found Dr. Phan's opinion "somewhat persuasive," but concluded that more restrictive limitations were warranted.  AR 25.

1

**B.       Supportability**

2          The ALJ made no specific findings regarding the supportability of Drs. Khademi's or

3   Lee's opinions, but instead simply acknowledged the evidence that the physicians themselves

4   articulated in support of their opined limitations.  *See* AR 25  (citing AR 1431, and noting that

5   "Dr. Khademi reported [Plaintiff's] imaging and physical therapy assessment supported [his

6   opined] limitations"), 25 (citing AR 1221, and noting that "[t]o support [his opined] limitations,

7   Dr. Lee referenced [Plaintiff's] neck and back pain" and "imaging that showed cervical spinal

8   stenosis and foraminal stenosis, [and] positive Spurling test with left arm tingling").  The ALJ's

9   failure to make any supportability findings constituted error requiring remand.  *See* 20 C.F.R. §§

10  404.1520c(a)-(c) 416.920c(a)-(c); *Woods*, 32 F.4th at 792.

11

**C.       Consistency**

12         The ALJ offered three identical reasons in support of the conclusion that Drs. Khademi's

13  and Lee's opinions were not consistent with the record as a whole, including that:  (1) Plaintiff's

14  physical examinations typically revealed no abnormal movements and a normal gait; (2)

15  Plaintiff's strength was generally within normal limits; and (3) Plaintiff possessed generally

16  normal sensation and reflexes.  AR 25-26.  Again, much like Plaintiff's mental impairments, the

17  ALJ's consistency analysis falls short of the regulations' articulation requirements because it

18  does not explain how the above three observations and accompanying record citations made Dr.

19  Staley's limitations more consistent than those offered by Drs. Khademi and Lee.  This failure

20  alone constitutes error.  *See* 20 C.F.R. §§ 404.1520c(a)-(c) 416.920c(a)-(c); *Woods*, 32 F.4th at

21  792

22         Additionally, the Court's review of the medical evidence regarding Plaintiff's cervical

23  impairments further reveals that the ALJ primarily "cherry-picked" routine findings at

1   examinations unrelated to Plaintiff's cervical impairments, many of which were outdated

2   because the examinations took place prior to the 2020 deterioration of Plaintiff's impairments.

3   *See* AR 16 (noting "changed circumstances"  and "new and material evidence" related to

4   Plaintiff's degenerative disc disease associated with Plaintiff's 2019 application for benefits);

5   *see also* AR 25, 26 (citing AR 1386, 1387) (Dr. Lee's 2016 and 2017 routine observation notes

6   describing Plaintiff's normal posture and normal sensation upon examination of lower back – not

7   cervical – pain), 25, 26 (citing AR 401, 637, 572) ("check-box" routine observations made by

8   Sunrise clinicians during Plaintiff's 2017 and 2018 mental health visits).

9          Moreover, the ALJ mischaracterizes the record evidence regarding Plaintiff's sensation,

10   offering only one citation to medical records that post-dated the early 2020 deterioration of

11   Plaintiff's cervical impairments and her increase in related pain.  AR 25, 26 (citing AR 1401)

12   (Dr. Lee noted Plaintiff's "[n]ormal [s]ensation/[s]trength/[r]eflexes"); *but see* AR 25, 26 (citing

13   AR 1387) (Dr. Lee's 2016 examination notes for a visit unrelated to Plaintiff's cervical pain).

14   During the cited February 2020 visit, Dr. Lee diagnosed "mechanical neck pain" following an x-

15   ray that showed "no acute fracture." AR 1401.  Dr. Lee also noted Plaintiff's limited range of

16   motion due to pain and a "positive Spurling's maneuver."[15]  AR 1401.

17          Most of the medical evidence following the deterioration of Plaintiff's cervical

18   impairments in early 2020 demonstrates that Plaintiff's sensation was *not* normal.  *See* AR 1409

19   (Plaintiff presents to an urgent care facility in January 2020 with pain that "shoots down [her

20   neck and arm" and with numbness in her fingertips), 1374 (Dr. Lee observes that Plaintiff has

21   "new right arm radiating symptom" in April 2020), 1322-1327 (neurosurgeon, Dr. Su, diagnoses

22

23   ---

[15] A Spurling test "is one of the best-known and most widely used provocative tests for the assessment of the cervical spine." Steven J. Jones & John-Mark M. Miller, *Spurling Test*, National Library of Medicine (Aug. 8, 2022), https://www.ncbi.nlm.nih.gov/books/NBK493152/.  A positive Spurling test typically indicates "cervical nerve root compression commonly related to intervertebral disc pathology."  *Id.*

degenerative cervical disc disease with "likely sensory radiculopathies," and observes that Plaintiff has "developed radiating pain" in both of her arms and hands, and experiences numbness and tingling and difficulty lifting objects").  Accordingly, the ALJ's citation to Dr. Lee's February 2020 observation of normal sensation, without more, does not constitute substantial evidence undermining the consistency of Dr. Lee's and Dr. Khademi's opined limitations.

For these reasons, the ALJ's consistency findings regarding Drs. Lee's and Khademi's medical opinions were not supported by substantial evidence.

### D.    Evaluation of Medical Opinions Regarding Musculoskeletal Impairments on Remand

The ALJ's error in evaluating the supportability and consistency of Drs. Lee's and Khademi's medical opinions cannot be characterized as harmless, and the ALJ is therefore required on remand to re-evaluate Dr. Lee's and Khademi's medical opinions – in addition to the medical opinion from Dr. Staley, which the ALJ adopted.[16]

Dr. Lee's and Khademi's opinions were both at least as supportable and as consistent with the longitudinal record as Dr. Staley's opinion.  Specifically, given the 2020 deterioration of Plaintiff's cervical impairments, the restrictive postural, reaching, and standing/walking limitations opined to by Drs. Khademi and Lee in 2020 -- in addition to their opinions regarding Plaintiff's need for breaks and attendance issues -- were consistent with the most recent medical evidence.[17]  *See* AR 1401 (Dr. Lee's positive Spurling's test), 1359 (Dr. Lee's treatment notes

---

[16] Had the ALJ adopted the limitations opined to by Drs. Khademi and Lee, Plaintiff would have been rendered disabled.  *See* AR 140-41 (VE testimony that there would be no jobs for a claimant who required the breaks that Plaintiff did or who was late to work or absent as frequently as Drs. Khademi and Lee opined Plaintiff would be due to her impairments.).

[17] In finding Dr. Staley's opinion consistent, the ALJ cited solely to evidence demonstrating that Plaintiff suffered from degenerative disc disease, "pain that radiated to her upper extremity," and a deficit in her range of motion.  AR 25.  The ALJ did not, however, cite to any additional evidence that explained why Plaintiff's related limitations should be less restrictive than those opined to by Drs. Lee and Khademi.  *See* AR 25.

1    regarding Plaintiff's pain and referral to physical therapy), 1360 (Plaintiff's May 2020 MRI

2    results), 1356 (Plaintiff's June 2020 discontinuation of physical therapy due to pain and referral

3    back to Drs. Khademi and Lee for injections), 1322 -27 (neurosurgeon  Dr. Su's diagnoses of

4    degenerative disc disease with foraminal and canal stenosis and "likely sensory radiculopathies"

5    and discussion of Plaintiff's treatment options).

6            Moreover, regarding supportability, Dr. Staley, a non-examining, consulting physician,

7    relied solely on his review of Plaintiff medical records in existence as of October 2019.  AR 221-

8    22.  By contrast, in addition to their own examinations and treatment records, Drs. Khademi's

9    and Lee's medical opinions were supported by additional post-2019 tests and records, including

10   a February 2020 x-ray and Spurling test, the May 2020 MRI results, a June 2020 physical

11   therapy assessment, and neurosurgeon, Dr. Su's November 2020 assessment and diagnosis.  *See*

12   AR 1221, 1431.  Thus, Drs. Khademi's and Lee's opinions were at least as supportable as the

13   opinion from Dr. Staley (and are likely more supportable).

14           Accordingly, on remand, in addition to re-evaluating supportability and consistency, the

15   ALJ is again required to consider the remaining three factors – treatment relationship,

16   specialization, and any "other factors" -- with respect to the medical opinions from Drs. Lee,

17   Khademi, and Stanley concerning Plaintiff's musculoskeletal impairments.  *See* 20 C.F.R. §§

18   404.1520c(b)(3), 416.920c(b)(3); *accord Woods*, 32 F.4th at 792.

19   **IV.    Remedy**

20           Plaintiff asks the Court to remand for payment of benefits.  Dkt. 10 at 17.  The Social

21   Security Act permits courts to affirm, modify, or reverse the Commissioner's decision "with or

22   without remanding the case for a rehearing." 42 U.S.C. § 405(g).  "[W]here the record has been

23   developed fully and further administrative proceedings would serve no useful purpose, the

district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Luther v. Berryhill*, 891 F.3d 872, 877–78 (9th Cir. 2018) (citations omitted).

It is not clear from the record here that the ALJ would be required to find Plaintiff disabled if all of the challenged medical opinions were properly evaluated. Therefore, remand is appropriate.

**CONCLUSION**

For the reasons set forth above, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ must reconsider the persuasiveness of the medical opinions regarding Plaintiff's mental impairments from Drs. Robinson, Eather, Hawley, and Yun, in addition to the medical opinions regarding Plaintiff's musculoskeletal impairments from Drs. Lee, Khademi, and Staley. As discussed above, in addition to the requisite consistency and supportability factors, the ALJ is also required to explicitly consider the additional three factors for evaluating medical opinions. *See* 20 C.F.R. § 416.920c(a)-(c) (requiring ALJs to evaluate equally persuasive opinions on the basis of the provider's relationship with the claimant, specialization, and "other factors," in addition to supportability and consistency).

Dated this 20th day of December 2022.

S. KATE VAUGHAN
United States Magistrate Judge